[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 257 
Recently this court decided it is an abuse of discretion for the juvenile court to deny a parent a contested review hearing (Welf. Inst. Code, § 366.21, subd. (e))[1] when the parent has tendered an adequate statement explaining the basis of her request for a contested hearing. (Ingrid E. v. Superior Court
(1999) 75 Cal.App.4th 751.) Left unresolved in that case was the general issue whether a juvenile court has the power to require a formal offer of proof before a party may obtain a contested review hearing. The matter before us presents that issue. We conclude the court may not, consistent with the requirements of statute and principles of due process, deny a party the right to a contested review hearing based on an allegedly inadequate or even a nonexistent offer of proof.
 BACKGROUND
On September 21, 1998, the Department of Health and Human Services (DHHS) filed amended section 300 petitions on behalf of three-year-old James and four-year-old Matthew. Those petitions alleged generally that appellant, Kathleen K., the mother of the minors, suffered from mental illness and substance abuse problems that rendered her incapable of providing for the care and supervision of the minors. The petitions also alleged that appellant had threatened to kill the minors.
DHHS detained the minors on August 13, 1998. On November 13, 1998, the juvenile court sustained the petitions after amending them further, adjudged the minors dependent children, and ordered DHHS to provide appellant with reasonable reunification services. The court also scheduled a review hearing pursuant to section366.21, subdivision (e).
Visitation with the minors was one component of appellant's reunification plan. The juvenile court ordered DHHS to provide appellant with supervised weekly visits. According to the social worker, appellant failed to avail herself of the opportunity to visit with the minors. In March 1999, appellant canceled a visit due to illness and thereafter her whereabouts became unknown. Moreover, as of the social worker's May 1999 report, appellant had made just three telephone calls to the minors.
Appellant's participation in reunification services was inconsistent. She completed a series of parenting classes. However, appellant failed to test on *Page 259 
a regular basis for illegal drug use and did not respond to a referral for individual counseling. Moreover, appellant had not obtained a residence and failed to maintain contact with the social worker. DHHS recommended termination of appellant's reunification services at the section 366.21, subdivision (e) hearing.
At the May 17, 1999, six-month review hearing pursuant to section 366.21, subdivision (e), counsel for appellant requested a contested hearing on the issue whether appellant should receive an extended period of reunification services. Counsel asserted appellant was drug testing regularly, had completed parenting classes, and now had a residence. Counsel also asserted appellant's doctor agreed appellant no longer needed psychotropic medications.
Counsel for the minors urged the juvenile court to reject appellant's request for a contested hearing. Counsel asserted there was no factual dispute existing between the parties. Counsel also asserted reunification services for appellant should be terminated due to appellant's failure to maintain contact with the minors during the past six months.
Counsel for DHHS agreed with the position expressed by the minors' counsel.
Counsel for appellant said a contested hearing was necessary in order for the juvenile court to hear appellant's testimony about her contact with the minors. Counsel also asked for cross-examination of the social worker and said it was possible the social worker then might alter her opinion about whether to recommend continued services to appellant.
The juvenile court said it was "not satisfied" appellant had "issues regarding [a] contested hearing." The parties then discussed appellant's visitation pattern with the minors. Appellant averred she had arranged a visit, but one of the minors had become ill.
Counsel for appellant said appellant "would like me to add on two occasions since juris [sic], attempt to set up visits, once because [the] minor was sick, one because transport worker was sick — visits did not occur. So she has made efforts to have visits. She has had substantive phone contact with her kids."
The juvenile court denied appellant's request for a contested hearing. The court said it had not heard a "sufficient offer of proof as to evidence that would be presented at the contested proceeding via documentary evidence or *Page 260 
testimony by witnesses." The court then ordered reunification services for appellant terminated but left the previous visitation order in effect. This appeal followed.
 DISCUSSION I
Appellant contends the order by the juvenile court denying her request for a contested six-month review hearing "which would have permitted her an opportunity to testify as to the significance of the contacts with her children and their caretaker, and the reasons why she had not visited more, deprived her of due process." Relying in part on our opinion in Ingrid E. v. Superior Court, supra, 75 Cal.App.4th 751, appellant argues she was entitled to adduce evidence at the review hearing relevant to the issue of whether she had maintained contact with the minors. According to appellant, her "offer of proof attempted to establish the nature of the contact. She also attempted to establish why there was not more contact. It was error for the court not to permit her to do so." Appellant says a review hearing is a "critical phase," since termination of reunification services was the outcome recommended by DHHS. Appellant alleges the court's order violated both statutory law and her constitutional right to due process.
DHHS argues appellant has failed to demonstrate an abuse of discretion by the juvenile court in denying her a contested review hearing. DHHS says a contested hearing was unnecessary and would not have affected the outcome of this case. DHHS tries to distinguish Ingrid E. v. Superior Court, supra, because the 18-month review hearing at issue there was the mother's last opportunity to prevent termination of her relationship with her children. DHHS claims appellant was not denied due process and avers that, even if the court erred, no miscarriage of justice resulted.
 II
We begin, as we must, with a discussion of the pertinent statutory authority. Subdivision (e) of section 366.21 governs the review hearing conducted by the juvenile court in this case.[2]
As the terms of section 366.21, subdivision (e) make clear, the six-month review hearing has significant ramifications for a parent. At that hearing, the *Page 261 
juvenile court may, as it did in this case, terminate a parent's reunification services. As we noted in Ingrid E., supra, that action may lead to the permanent severance of the parent-child relationship. (Ingrid E., supra, at p. 755.) However, pursuant to subdivision (e), before the court may take such action, the agency must meet its burden to show, by a preponderance of the evidence, that the minor should not be returned to parental custody or that services should be ended. Moreover, any pertinent action the court takes must be expressly supported by "appropriate findings" and a "factual basis."
Section 366.21, subdivision (e) provides expressly for a "hearing" to be held on the matters embraced by that statute. However, in Ingrid E., supra, at page 758, we noted the absence of statutory authority governing the rights of parents at review hearings. Moreover, we acknowledged the importance of permitting the juvenile court to exercise the broadest possible discretion in the adjudicative process at review hearings. (Ibid.) On the other hand, we cautioned that such discretion *Page 262 
necessarily was constrained by a recognition that a parent must have the right to present evidence and assert his or her legitimate interests in the proceeding. (Ingrid E., supra, at p. 759.)
 III
In order to understand the role and stature of review hearings generally in the dependency system, it is instructive to review the general statutory framework within which those hearings operate. Legislation enacted in 1982 established, among other provisions, review hearings to be heard every six months, up to 18 months. (Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 246.) Thereafter, subsequent legislation modified the dependency scheme generally and highlighted the importance of review hearings. (Id.
at pp. 247-249.) At the review hearings conducted since then, it is statutorily presumed the child will be returned to parental custody unless the juvenile court finds by a preponderance of the evidence that returning the minor will create a substantial risk of detriment to the well-being of the minor. Moreover, it is the agency, rather than the parent, that bears the burden of establishing detriment. (§§ 366.21, subds. (e), (f), 366.22, subd. (a).)
At every review hearing, the juvenile court is obliged to determine whether the agency offered the parent reasonable reunification services. (§§ 366.21, subds. (e), (f),366.22, subd. (a).) At the 12-month review hearing, if the court does not return the minor to parental custody and finds no substantial probability of return within 18 months, the court must terminate reunification efforts and schedule a permanent plan hearing. (§366.21, subd. (g).) "If the child is not returned to the parents at the 18-month review, the court must set the matter for a section 366.26 hearing." (Cynthia D. v. SuperiorCourt, supra, 5 Cal.4th at p. 249.) "Even then, the court must determine by clear and convincing evidence that reasonable reunification services have been provided or offered to the parents. (§ 366.21, subd. (g)(1).)" (Ibid.)
Review hearings are a critical aspect of the dependency system in two respects. First, findings made at those hearings often form the basis of an order at the permanent plan hearing terminating parental rights. (§ 366.26, subd. (c).) In order to terminate parental rights, the juvenile court must expressly make two findings: "(1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated." (Cynthia D. v. Superior Court, supra, at pp. 249-250.)
Of course, as we have seen, it is at the review hearings that crucial determinations regarding reunification efforts and the return of the minor are *Page 263 
made. (Id. at p. 250.) This is not news. When the statutory revisions of 1982 were reviewed several years later, they were found to be insufficient. The Legislature established a task force to look into the matter. More statutory reforms followed. (Cynthia D. v.Superior, supra, at p. 247.) Of particular pertinence here, the task force declared, "`the critical decision regarding parental rights will be made at the dispositional or review hearing, that is, that the minor cannot be returned home and that [further] reunification services should not be pursued. In such cases, the decision to terminate parental rights will be relatively automatic if the minor is going to be adopted.' (Task Force Report, [Senate Select Com. on Children 
Youth, SB 1195 Task Force Rep. on Child Abuse Reporting Laws, Juvenile Court Dependency Statutes, and Child Welfare Services (Jan. 1988)], p. 11.) The task force's intent was `to eliminate duplication between regular review hearings and the termination hearing. Therefore, the decisions made at the review hearing are not subject to relitigation at the termination hearing. This hearing determines only the type of permanent home.' (Task Force Report, supra, p. 12.)" (Cynthia D. v. Superior Court, supra, at p. 250, emphasis added.)
From the perspective of the parent, review hearings are the essential mechanisms by which he or she may be foreclosed from any further relationship with the child. Parents have a liberty interest in their relationship with their children. This interest is fundamental and, therefore, may not be extinguished without due process. (Santosky v. Kramer (1982) 455 U.S. 745 [71 L.Ed.2d 599].) Family preservation, of which reunification services constitutes an integral component, is the "first priority" through the review hearing stage of dependency proceedings. (In reElizabeth R. (1995) 35 Cal.App.4th 1774, 1787.) During this time, the parent has the best opportunity he or she ever will have to make the strongest case possible in favor of returning the child to parental custody. Thus, review hearings represent one of the "[s]ignificant safeguards . . . built into the current dependency scheme." (In re Marilyn H. (1993) 5 Cal.4th 295, 307, 308.)
 IV
A "hearing" denotes an opportunity to be heard and to adduce testimony from witnesses. Moreover, parties in civil proceedings have a due process right to cross-examine and confront witnesses. (In re Malinda S. (1990) 51 Cal.3d 368, 383, fn. 16.) Read as a whole, subdivision (e) of section 366.21 must mean appellant has the right to, in some manner, "make her case" in a review hearing on behalf of her parental interests. The primary issue is to what extent, if any, the juvenile *Page 264 
court may affect or delimit that right. Although the statute itself provides no ready resolution, the Evidence Code provides general guidance. (Evid. Code, § 300; and see Cal. Rules of Court, rule 1412(a), (b), (j).)
We also know that, where the Legislature has wanted to limit the nature of a parent's right to a contested dependency hearing, it has done so. For example, section 388 permits a party to petition for the modification of a previous juvenile court order or even the termination of the court's jurisdiction. A hearing is required, according to statute, if, but only if, the court determines the best interests of the minor may be promoted by the proposed change. Moreover, unlike the statute with which we currently deal, section 388 places the burden on the parent.[3]
In In re Heather P. (1989) 209 Cal.App.3d 886, 891, the mother of the minor claimed the procedure established under section 388 violated her due process rights because of the discretion it gave to the court to determine whether to conduct a hearing. Rejecting that argument, the court emphasized the principle that a parent's petition should be construed liberally in favor of granting a hearing. (Ibid.)
The court in In re Heather P., supra, at page 891, construed the requirement in section 388 imposed on a parent to petition the juvenile court for a hearing in the context of dependency proceedings as a whole. The court stated as follows: "At each hearing until after the permanency plan, the mother had the right to present evidence that Heather could be returned home safely. By the time the permanency plan was formed, the court reasonably assumed the mother would not be able to eliminate the problems which required Heather's placement outside her home. After the permanency plan it was reasonable to require her to petition the court if she wished to present evidence that her circumstances had changed." (Id. at pp. 891-892.) *Page 265 
In contrast to section 388, section 366.21, subdivision (e) confers on a parent the right to a hearing at which the parent has the right to make his or her case, as we explain in part V, concerning the parent's progress in attempting to effectuate reunification with his or her children.[4] If the Legislature had intended a bifurcated procedure in subdivision (e) similar to that found in section 388, doubtless it would have so provided. That it did not do so suggests that, as Heather P. noted, ordinarily a parent must have the right to present evidence "at each hearing until after the permanency plan." (In re Heather P.,supra, 209 Cal.App.3d at p. 891; cf. In re Johnny M. (1991)229 Cal.App.3d 181, 190.)
 V
What, then, are the due process attributes of a proper review hearing in the dependency system? Along with the important requirement of providing proper notice of such a hearing, the right to present evidence, and to cross-examine adversarial witnesses, i.e., the right to be heard in a meaningful manner, are the minimum. (In re Matthew P. (1999) 71 Cal.App.4th 841, 851; Inre Crystal J. (1993) 12 Cal.App.4th 407, 412, see also In reMalinda S., supra, 51 Cal.3d at p. 383, fn. 16.) "A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses. . . ." (In re Crystal J., supra, at p. 413.) The cases cited above did not consider review hearings. However, in light of the critical role review hearings play in the dependency system, due process requires review hearings be accorded the same entitlements.
The essential characteristic of due process in the statutory dependency scheme is fairness in the procedure employed by the state to adjudicate a parent's rights. (Id. at p. 412.) Due process also connotes a "hearing appropriate to the nature of the case." (Mullane v. Central Hanover Bank Trust Co. (1950)339 U.S. 306, 313 [94 L.Ed. 865, 872].) In Ingrid E., supra, 75 Cal.App.4th at page 757, we acknowledged due process is a flexible concept, one whose application depends on the circumstances presented. We also recognized the juvenile court has the statutory duty and the power to identify the issues relevant to the particular hearing and to make necessary relevancy determinations. (Id. at p. 760.) Finally, we made clear our recognition of the pressures faced by our overworked juvenile courts. (Ibid.)
Presented with the facts in Ingrid E., supra, this court had little difficulty deciding the petitioner there tendered such a sufficient offer of proof the *Page 266 
juvenile court erred prejudicially in refusing to conduct a contested hearing. (Ingrid E., supra, 75 Cal.App.4th at pp. 759-760.) We reached our conclusions, in part by "[b]alancing petitioner's interest in regaining custody of the minors against the state's desire to conclude dependency matters expeditiously and permit the juvenile court to exercise broad control over the proceedings. . . ." We concluded petitioner had established her right to a contested hearing. (Id. at pp. 759-760.)
Under the circumstances presented in Ingrid E., supra, we had no need to decide whether the juvenile court may deny a party a contested hearing because the party has failed to tender an offer of proof. (Id. at p. 760.) This case presents that issue. It is true the parties suggested in their written arguments, appellant made an "offer of proof" at the hearing. The court also assumed one was made. Where the parties differ is over the sufficiency of the proof offer. However, in their written arguments neither party has addressed the issue or considered the elements of a proper offer of proof.
None of this matters. From our examination of the record, we conclude appellant tendered no offer of proof in the juvenile court. In fact, from appellant's counsel's comments to the court, which were spread over several pages of the transcript of the review hearing, it is difficult to discern precisely how appellant would have proceeded at a contested hearing.
 VI
We are faced, then, squarely with the issue of the propriety of the juvenile court requiring offers of proof in determining whether to conduct review hearings. As a matter of statutory construction and constitutional due process, we conclude the juvenile court cannot require a party to a review hearing to tender an offer of proof as a condition to obtaining a contested hearing. (See In re Johnny M., supra, 229 Cal.App.3d at p. 191;Andrea L. v. Superior Court (1998) 64 Cal.App.4th 1377, 1386.) A party must be able to make its best case, untrammeled by evidentiary obstacles arbitrarily imposed by the courts without legislative sanction. (Cf. In re Heather P., supra, 209 Cal.App.3d at p. 891.)
The juvenile court may make evidentiary requests of a party on any of a number of issues during the contested hearing itself. As we have suggested, the Evidence Code, among other statutory provisions, provides ample means for the courts to control contested proceedings in the dependency courts. (See, § 350 and Cal. Rules of Court, rule 1412(a), (b), (j).) If, for example, a party's cross-examination appears to be irrelevant to the issues *Page 267 
presented in the hearing, then the court properly may limit it, after inquiry. (In re Jeanette V. (1998) 68 Cal.App.4th 811, 817.) However, the court must permit the parent to attempt to contest potentially adverse recommended findings.
Our conclusion is compelled by application of the flexible balancing standard employed in a due process analysis. Here, it is axiomatic that appellant's due process rights are implicated. (In re Malinda S., supra, 51 Cal.3d at p. 383, fn. 17.) The balancing standard considers the private interest that will be affected by the agency's action, the risk of an erroneous deprivation of that interest, the interest in informing parents of the basis for and consequences of the action and in enabling them to present their side of the story, and the agency's interest in expeditious decisionmaking as affected by a burden caused by an additional procedural requirement. (In re Malinda S., supra, at p. 383.)
Applying the factors stated above to the issue in this case, we are persuaded that due process requires the juvenile court to permit a parent to avail himself or herself of the right, if he or she chooses, to a contested review hearing without conditioning that right on a demand for an offer of proof. As we have indicated, the interests possessed by the parent at a review hearing are substantial ones. Consequently, it is essential for the parent to be enabled to make his or her case. Finally, as we have emphasized, the court retains sufficient authority and discretion to conduct the hearing with reasonable dispatch consistent with the dictates of the statutory framework.[5]
In support of its claim that a juvenile court properly may require an offer of proof before granting a contested hearing, DHHS relies on In re Jeanette V., supra, 68 Cal.App.4th 811, andMaricela C. v. Superior Court (1998) 66 Cal.App.4th 1138. We are unpersuaded. As appellant notes in her brief, unlike here, each of those cases involved hearings following the expiration of the reunification period. Moreover, in both cases the offers of proof were irrelevant to the issues to be decided at the hearings. (Maricela C., supra, at pp. 1146-1148; In re Jeanette V., supra, at pp. 815-817.) Thus, those decisions are distinguishable on their facts from this case.
 VII
Our state's dependency statutory scheme imposes strict requirements to resolve cases expeditiously. It also requires due process for all parties, *Page 268 
including parents. Review hearings are critical proceedings. They are the point at which, as occurred in this case, a parent may be denied further reunification services. As we have seen, once that occurs, the focus shifts from the parent's interests and the burden is placed on the parent to demonstrate why the parent-child relationship should not end.
In this case, appellant asked for, but was denied, a hearing by which she could formally challenge the propriety of ending her reunification services. The juvenile court, without statutory authority, refused to accord appellant a contested hearing. It should have conducted such a hearing, implementing appellant's right to be heard at this critical stage of the dependency proceedings. The court's failure to do so resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)
On remand, the juvenile court shall conduct another review hearing pursuant to section 366.21, subdivision (e), and consistent with the principles expressed in this opinion. At that hearing, appellant shall be provided with the panoply of rights to which she is entitled, including the right to present evidence, cross-examine adverse witnesses, and to argue the law and the facts developed in that hearing. At the conclusion of the hearing, based on the evidence adduced, the court must decide whether DHHS has carried its burden and whether there are to be continued services for appellant as to either or both of the minors. In doing so, the court must expressly support its conclusions with "appropriate factual findings" and declare a "factual basis."
 DISPOSITION
The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.
We Concur:
SCOTLAND, P.J.
SIMS, J.
[1] Further statutory references to sections of an undesignated code are to the Welfare and Institutions Code.
[2] "At the review hearing held six months after the initial disposition hearing, the court shall order the return of the child to the physical custody of his or her parent or guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment. The failure of the parent or guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental. In making its determination, the court shall review and consider the social worker's report and recommendations and the report and recommendations of any child advocate appointed pursuant to Section 356.5; and shall consider the efforts or progress, or both, demonstrated by the parent or guardian and the extent to which he or she availed himself or herself of services provided. . . . [¶] Whether or not the child is returned to a parent or guardian, the court shall specify the factual basis for its conclusion that the return would be detrimental or would not be detrimental. The court also shall make appropriate findings pursuant to subdivision (a) of Section 366; and where relevant, shall order any additional services reasonably believed to facilitate the return of the child to the custody of his or her parent or guardian. The court shall also inform the parent or guardian that if the child cannot be returned home by the 12-month permanency hearing, a proceeding pursuant to Section 366.26
may be instituted. . . . [¶] If the child was under the age of three years on the date of the initial removal . . . and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 within 120 days. If, however, the court finds there is a substantial probability that the child, who was under the age of three years on the date of initial removal . . . may be returned to his or her parent or guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing. . . . [¶] If the child was removed initially under subdivision (g) of Section 300 and the court finds by clear and convincing evidence that the whereabouts of the parent are still unknown, or the parent has failed to contact and visit the child, the court may schedule a hearing pursuant to Section 366.26 within 120 days. . . . [¶] In all other cases, the court shall direct that any reunification services previously ordered shall continue to be offered to the parent or guardian pursuant to the time periods set forth in subdivision (a) of Section 361.5, provided that the court may modify the terms and conditions of those services. [¶] If the child is not returned to his or her parent or guardian, the court shall determine whether reasonable services have been provided or offered to the parent or guardian that were designed to aid the parent or guardian in overcoming the problems that led to the initial removal and the continued custody of the child. The court shall order that those services be initiated, continued, or terminated."
[3] That statute provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction. [¶] If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to such persons and by such means as prescribed by Section 386, and, in such instances as the means of giving notice is not prescribed by such sections, then by such means as the court prescribes."
[4] By statute, parents are entitled to employ the juvenile court's subpoena power to compel the presence of witnesses at hearings. (§ 341; In re Malinda S., supra,
51 Cal.3d at p. 384.)
[5] This case does not present, and we do not decide, the question whether the juvenile court, after a contested review hearing has begun, may require the proponent of evidence to make an offer of proof in lieu of direct testimony of a witness, provided the witness is available for cross-examination. *Page 269