Filed 5/14/25 Ranga v. Galan CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIUS RANGA, | |
| Plaintiff and Respondent, | G065402 |
| v. | (Super. Ct. No. 25V000205) |
| JESSICA GALAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Cheri T. Pham, Judge. Affirmed.

Law Offices of Frances Prizzia and Frances Marie Prizzia for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

Jessica Galan appeals an order granting a domestic violence restraining order (DVRO) against her. On the limited record before us, we find the trial court did not abuse its discretion in granting the restraining order, and there is substantial evidence supporting its findings. We further find the court did not deny Galan a meaningful opportunity to be heard and therefore did not violate her due process rights. We affirm.[1]

FACTUAL AND PROCEDURAL SUMMARY

Marius Ranga filed a petition for a DVRO against Galan in January 2025. The petition was based on allegations Galan sent harassing text messages to Ranga and his pregnant girlfriend and at least one e-mail to his employer containing false allegations.

Ranga testified he began dating Galan in late 2021, but he broke off the relationship in early 2022. He stated the trouble began in May 2024, when he started getting messages every day, as did his friends, his girlfriend, ex-girlfriends, and even his employer. Ranga added evidence at the hearing on the petition of an e-mail sent by Galan to his employer stating she was in a relationship with Ranga and they had a baby together, claiming that he was cheating on Ranga with his current girlfriend. Ranga and Galan never lived together, and they do not have a child together.

Ranga testified Galan was harassing him nonstop and threatening him and his family. In one of the messages, Galan threatened to run over his pregnant girlfriend. Ranga testified this caused him and his family stress. They were scared to go to the park or the beach because one of

_____

[1] As Ranga did not file a respondent's brief, we decide this case based on the record on appeal and appellant's opening brief. (Cal. Rules of Court, rule 8.220(a).)

the messages included a picture of his girlfriend at the beach. That incident prompted him to get the police involved, and he filed a police report followed by the petition for restraining order.

In response, Galan denied sending the messages. She testified none of the phone numbers identified in Ranga's evidence belonged to her. The trial court noted the messages appeared to be from her, specifically noting the e-mail to Ranga's employer identifies the sender as "Jessica." The court asked who might impersonate Galan, and she offered three possibilities: (1) Ranga was sending the messages himself because he had some sort of fixation on her; (2) Ranga's friend Mohammad might have sent the messages as revenge because Galan had interfered with a romantic relationship between her friend and Mohammad; or (3) it could be Ranga's current girlfriend.

Galan brought a folder of evidence to the hearing which the court reviewed and marked for identification. The evidence included documents from Galan's employer showing when she was working from her home IP address at relevant points in time, when she was in court on another matter, or when she was texting with someone else at the same time as some of the messages in Ranga's evidence. Galan describes this as her "alibi evidence."

Galan testified she contacted a private investigator and forensics technologist to see if there was a way to trace the numbers from which the messages had been sent, but she was told that was nearly impossible, and even if it was possible, it was expensive. She opted not to spend the money.

The trial court observed that cell phones make it possible to send messages from anywhere at any time. This is not a case which requires Galan's presence at any particular place, so evidence that she was working or in court is not persuasive to establish she could not have sent the messages.

3

The court also noted Galan could have multiple phones, or she could easily create Google numbers and send messages from a computer or laptop.

The trial court found the text messages and e-mails sent to Ranga's employer included detailed descriptions and pictures of Ranga and Galan together and the court found it difficult to believe a third party (or Ranga himself) sent the messages. The court further found the idea that someone else was sending the messages to be speculation, not evidence.

Before making its ruling, the trial court stated: "I need concrete proof. What I do have is your denial of everything that he's accused you of . . . . Right?" And Galan answered, "Correct." The court granted the DVRO for a total of five years, finding "acts of domestic violence have occurred between the parties and that the responding party is the perpetrator, the moving party is the victim and that the violence did not occur in self-defense." The court found Ranga's evidence to be more persuasive than Galan's.

Galan timely appealed.

## DISCUSSION

## I.

### STANDARD OF REVIEW

A court's decision to grant or deny a restraining order under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.) is reviewed for abuse of discretion. (*Navarro v. Cervera* (2025) 108 Cal.App.5th 229, 236.) Abuse of discretion is found when the trial court exceeds the bounds of reason. (*In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 933 (*D.S.*).) Likewise, a court's failure to consider evidence is reviewed for abuse of discretion. (*In re Marriage of Davila and Mejia* (2018) 29 Cal.App.5th 220, 226 (*Davila*).) A court's factual findings are reviewed for substantial evidence. (*Ibid.*)

4

## II.

### The Trial Court Did Not Err in Granting the
### Domestic Violence Restraining Order

*A.    The Appellate Record Is Inadequate*

A "fundamental principle of appellate procedure [is] that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).) The appellate court will make "'all presumptions in favor of the trial court's action'" unless there is a contrary showing in the record. (*Id.* at p. 609.) "'"A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed."'" (*Ibid.*) "'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'" (*Ibid.*)

The record here is minimal. It consists of the trial court's minute order, the final restraining order issued after the hearing, and the reporter's transcript of the hearing itself. The record also includes a "case summary" prepared by the trial court clerk which includes case information, party information and case events, including filed documents. This summary confirms the initial petition for a restraining order was filed, and the reporter's transcript confirms that exhibits and evidence were attached to the petition. The petition, declaration, and supporting evidence are not part of the appellate record. Additionally, Galan failed to include the documentary evidence she produced to the court on the date of the hearing which the court marked as Exhibit A. The documentary evidence considered by the trial court is therefore completely absent from the record in this appeal.

We have no way of knowing what was included in Ranga's petition, or on what specific grounds he brought his request for the DVRO. We can somewhat determine the allegations from the reporter's transcript, but not the evidence or the exact allegations. Without a copy of the petition or Ranga's evidence, it is impossible to determine that his claims of abuse were not credible or that they did not support the issuance of the DVRO. Similarly, we cannot determine the usefulness of Galan's presented evidence. Galan's failure to provide a sufficient appellate record has therefore made it impossible to adequately review the court's discretion in issuing the DVRO.

Based on the limited record before us, we find there is substantial evidence to support the trial court's findings and conclude the court did not abuse its discretion in granting the order.

B.  *The Trial Court Did Not Reject or Fail to Consider Galan's "Alibi Evidence"*

Under the DVPA, "'abuse'" includes placing "a person in reasonable apprehension of imminent serious bodily injury to that person or to another." (Fam. Code, § 6203, subd. (a)(3).) It also includes stalking and threatening other named family or household members. (*Id.*, §§ 6203, subd. (a)(4), 6320, subd. (a).) A DVRO may be granted if the applicant demonstrates, by a preponderance of the evidence, there has been "a past act or acts of abuse." (*Id.*, § 6300, subd. (a); *Davila*, *supra*, 29 Cal.App.5th at p. 226 ["The DVPA requires a showing of past abuse by a preponderance of the evidence"].) The DVPA does not require corroboration or multiple sources of proof before a court can grant a DVRO. A petitioner's testimony alone, if credible, may suffice. (Fam. Code, § 6300, subd. (a); *In re Marriage of F.M. & M.M.* 65 Cal.App.5th 106, 118.)

6

Based on the record before us, the trial court considered Galan's evidence, weighed it, and found it inadequate to overcome Ranga's evidence. That is the court's use of discretion, not what Galan describes as "disregard[ing] competent, relevant records." Ranga's petition was accompanied by a declaration and evidence, including screenshots of various text messages and e-mails, apparently from Galan, which Ranga claimed to be harassing and abusive. The court found Ranga's evidence sufficient to establish abuse by a preponderance of the evidence. The court further found that Galan's evidence was less persuasive than Ranga's.

The trial court was not rejecting Galan's evidence or refusing "to credit admissible evidence." The evidence was considered. The court simply found it did not prove what Galan thought it proved. The court said, "[o]ur phones are kind of part of our anatomy. Just because we're at work, . . . out of state, or . . . out of the country doesn't mean that we can't send text messages or e-mail." The court was simply observing that Galan's evidence was insufficient to confirm she did not send text messages while she was logged in at work, in a courthouse, or while she was texting with her boyfriend.

Galan testified her employment records showed her employer tracked every keystroke, but she did not say she was making particular keystrokes at the time messages were sent. She also did not have her employer testify as to what the records show or what work she was doing at any specific time that would have hindered her ability to send harassing text messages. Galan's failure to bring additional testimony or evidence does not mean the court failed to consider her evidence. The trial court's finding that Galan's evidence had little probative value is not equivalent to a rejection of admissible evidence.

*C.*    *The Trial Court Did Not Improperly Shift the Burden of Proof to Galan*

In the case of *Curcio v. Pels* (2020) 47 Cal.App.5th 1 (*Curcio*), the trial court found that the plaintiff's written Facebook statements "raised 'a presumption that something happened.'" (*Id.* at p. 14.) The court then "shifted the burden to [the defendant] 'to prove by a preponderance of the evidence that [the plaintiff's] allegations are not true.'" (*Ibid.*) The *Curcio* court found this was improper, stating "the law imposes no such burden on a party opposing a restraining order." (*Id.* at p. 14.)

Galan argues the trial court here did something similar. As part of her defense, Galan offered possible third parties who might have been responsible for sending the text and e-mail messages to Ranga and others, including his employer. Galan offered her reasoning as to why each party was likely to be the messenger, but she failed to provide any evidence to support her position. The court found Galan's suggestions to be speculative.

Galan argues the trial court "impl[ied] her denial was insufficient unless she could produce the true culprit." She claims this is improper burden shifting, because the court should have required Ranga "to authenticate the screenshots and establish [Galan] as the author."

This is much different than the *Curcio* case, where the trial court explicitly asked the party opposing the DVRO to disprove the allegations without first finding the requesting party had established the allegations by a preponderance of the evidence. (*Curcio*, *supra*, 47 Cal.App.5th at pp. 14–15.) Here, the trial court stated Ranga's declaration and evidence were sufficient to establish his claims by a preponderance of the evidence. Because the declaration and evidence are not part of the record on appeal, we cannot review the trial court's conclusion. We presume instead the trial court's

8

conclusion is correct and resolve the issue against the appellant. (*Jameson*, *supra*, 5 Cal.5th at pp. 608–609.)

On the record before us, the trial court did not ask Galan to prove another's guilt. It asked her to establish her defense by evidence, rather than speculation. That is not burden shifting. Galan went so far as to inquire with a private investigator or forensic analyst to try to prove she was not the source of the phone numbers used to send the messages but elected not to proceed due to the cost. She told the court "I almost spent that money to hire [the investigator] to find out who it [was]." She did not say she could not afford it. She did not ask the court for more time for such an analysis to be completed. She elected not to gather evidence which might exonerate her. Instead, she went to a hearing armed only with a denial and speculation.

Galan asserts Ranga's "case consisted only of uncorroborated screenshots and testimony, contradicted by Appellant's sworn denial and documentary alibi records." This just means there is a question of fact to be resolved by the trial court which has the discretion to weigh all evidence and the credibility of the parties to come to a conclusion. The record establishes the court weighed the evidence and concluded in favor of Ranga. That does not mean the court failed to consider Galan's evidence or forced Galan to disprove something Ranga failed to prove in the first place.

D.    *The Trial Court Did Not Rely on Improper Character Evidence in Issuing the DVRO*

Information unrelated to the alleged abusive conduct may not be used to support issuance of a restraining order. (*Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079.) The use of character or propensity evidence to prove conduct on a specified occasion is prohibited. (Evid. Code, § 1101, subd. (a).) Even if minimally probative, such evidence must be excluded

where its prejudicial impact substantially outweighs its value. (Evid. Code, § 352.)

Galan takes issue with the trial court's questioning about her prior criminal history. She argues the court erred by using this information to assess her "credibility and discredit her testimony," but the record does not support that conclusion.

Galan argues evidence related to her prior arrests and legal issues has "no probative value on the question of whether [she] authored the disputed communications," and the trial court erred by "ground[ing] its decision in inadmissible character evidence rather than competent proof of abuse." The record confirms an inquiry by the court into her criminal history, but not reliance on it. The court asked if Galan ever went by another name and inquired if she was arrested in 2016 for spousal abuse and in 2021 for vandalism; however, the record noted Galan stated the charges for both instances were dismissed. The court also asked about a driving under the influence charge in 2023, which Galan confirmed. The court made no further comment about Galan's criminal history and did not list it as a reason it was issuing the DVRO.

The trial court based its ruling "on [its] review of the evidence and testimony" presented by the parties. The minute order includes Galan's criminal history as part of what was considered by the court prior to making its ruling, but does not state what influence, if any, her criminal history had on the court's final determination. The court specified the reason it was issuing the DVRO was because Ranga established abuse by a preponderance of the evidence. Galan denied sending the messages but offered only proof of where she was when certain messages were sent, not proof she could not have sent the messages using another device while she was working or texting

10

with someone else. The court therefore found Ranga's evidence more persuasive than Galan's and granted the DVRO on that basis.

*E.     The Trial Court Provided a Meaningful Opportunity for Galan to be Heard*

"Although the court may issue a DVRO based solely on the affidavit or testimony of the person requesting the order, it may do [so] only 'after notice and a hearing.'" (*D.S.*, *supra*, 87 Cal.App.5th at p. 934.) Due process requires "the right to be heard in a meaningful manner." (*In re James Q.* (2000) 81 Cal.App.4th 255, 265.) "A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses." (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 413.) Due process claims are reviewed independently because ""ultimate determination of procedural fairness"" is a question of law. (*D.S.*, *supra*, 87 Cal.App.5th at p. 933.)

Galan argues the trial court denied her "'right to be heard in a meaningful manner'" because it refused "to consider competent defense evidence" and "shift[ed] the burden to the respondent." Her argument relies on *D.S., supra,* 87 Cal.App.5th at pages 935–936, in which the trial court issued "a restraining order based solely on the written declarations of the parties with no further inquiry." (*Id.* at p. 935.) The *D.S.* court found that the appellant's "written response should have alerted the trial court that it had an obligation to ask questions designed to ascertain the truth of the allegations and the admissibility of the evidence" in support of the petition. (*Id.* at p. 936.)

The same is not true here. Galan did not file a written response at all. The trial court still set a hearing, listened to Galan's arguments, reviewed the evidence she brought to the hearing, and issued a ruling based on everything presented.

11

Having established the trial court did not shift the burden to Galan and it did not fail to consider any of her presented evidence, there is no support for the argument it did not give Galan a meaningful opportunity to be heard. Galan does not assert there was other evidence to be presented, that she needed more time to gather evidence, or that the court cut her off and failed to listen to her. To the contrary, she told the court she decided not to move forward with the private investigator. She did not call any other witnesses (her employer, her attorney, her boyfriend) to testify she was with them at the time she is alleged to have sent harassing text messages to Ranga. The court therefore gave Galan a meaningful opportunity to respond to Ranga's allegations, and her due process rights were not violated.

## DISPOSITION

The domestic violence restraining order is affirmed. Because Ranga did not respond to this appeal, no costs are awarded.


BANCROFT, J.*


WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.